SHAWN A. MANGANO, ESQ.
Nevada Bar No. 6730
shawn@manganolaw.com
SHAWN A. MANGANO, LTD.
9960 West Cheyenne Avenue, Suite 170
Las Vegas, Nevada 89129-7701
Tel:   (702) 304-0432
Fax:   (702) 922-3851

*Attorney for Plaintiff Righthaven LLC*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| RIGHTHAVEN LLC, a Nevada limited-liability company,<br><br>      Plaintiff,<br><br>   vs.<br><br>BRIEN SMITH, et al.,<br><br>      Defendants.<br>_____<br>AND OTHER ACTIONS IDENTIFIED IN OSC | Case No.: 2:10-cv-01031-LRH-LRL<br><br>**PLAINTIFF RIGHTHAVEN LLC'S OMNIBUS RESPONSE TO JUNE 28, 2011 ORDER TO SHOW CAUSE** |

Righthaven LLC ("Righthaven") hereby responds to the Court's June 28, 2011 Order, which asks that cause to shown why the company has standing to maintain the above-captioned copyright infringement cases. (Doc. # 16 at 3-5, the "OSC" or the "June 28th Order".)

Righthaven's response is based on the below memorandum of points and authorities, the declaration of Steven A. Gibson (the "Gibson Decl.") and the declaration of Mark A. Hinueber (the "Hinueber Decl."), both of which were originally filed with the Court in, among other actions, *Righthaven LLC v. Vote For The Worst, LLC, et al.*, Case No. 2:10-cv-1066-KJD-GWF ("*Vote For The Worst*")(Doc. ## 41-42) that have been resubmitted with this response, the declaration of Shawn A. Mangano, Esq. (the "Mangano Decl."), the pleadings and papers on file in this action, any oral

argument this Court may allow, and any other matter upon which this Court takes notice. The Court has not set oral argument on the OSC in any of the above-captioned cases as of this filing.

**MEMORANDUM OF POINTS AND AUTHORITIES**

I.   INTRODUCTION

Over 200 years ago, the framers of the U.S. Constitution recognized that written works and other forms of artistic expression were deserving of legal protection. U.S. CONST. art. I, § 8. These fundamental principles regarding protecting and fostering artistic creation did not disappear simply because artistic works have transitioned from tangible to digital. *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 928-929 (2005) (citing the concern that "digital distribution of copyrighted material threatens copyright holders as never before"). The digital age, however, has allowed infringement to occur on a massive scale. Righthaven was created precisely to stem this tide of unabashed copyright infringement on the Internet brought about by the technological ease of copying. While various defendants and media sources, whether mainstream or blogosphere posts, go to great lengths to portray Righthaven's business purpose in a negative light, there is nothing wrong with a party focused on protecting intellectual property—except, of course, from the perspective of an infringer.

Righthaven earnestly desires to fully comply with decisional law so that it properly obtains standing to seek redress for the unauthorized replication of copyrighted works to which it has been assigned ownership. Righthaven is also cognizant of the fact that the issues presented to this Court and that have been presented to other courts adjudicating Righthaven cases, involve areas of the law that have yet to be fully developed. In this regard, while Righthaven respectfully disagrees with the recent decision in *Righthaven LLC v. Hoehn,* 2011 WL 2441020, at *6 (D. Nev. June 20, 2011)("*Hoehn*"), the company expressly entered into a new contractual agreement with Stephens Media LLC ("Stephens Media") to address the concerns over certain provisions contained in the May 9, 2011 Clarification and Amendment to Strategic Alliance Agreement (the "Clarification"). (Mangano Decl. Ex. 1 at 1.) Righthaven's efforts resulted in the Amended and Restated Strategic

Alliance Agreement (the "Restated Amendment"), which the company maintains resolves any doubt as to its ability to sue for infringement of assigned copyrighted content.

First, the Restated Amendment clearly and unequivocally grants Stephens Media a non-exclusive license to exploit assigned copyrighted works. (*Id.* Ex. 1 at 2.) The Restated Amendment also eliminates Righthaven's obligation to give Stephens Media 30 days advance notice before being able to exploit a copyrighted work for any purpose other than in connection with an infringement action, which was a concern expressed in the *Hoehn* decision. (*Id.* at 3.) Moreover, the Restated Amendment replaces Stephens Media's 14-day right to repurchase a copyrighted work with the considerably more restrictive right to repurchase such content for fair market value five years after assigning the work to Righthaven. (*Id.*) notice before assigning a work to another party and removes Stephens Media's 30-day right to repurchase an assigned work. Likewise, these provisions were expressly revised to address the concerns expressed in the *Hoehn* decision. In short, the Restated Amendment is a response to the analysis provided in the *Hoehn* decision and, as such, it should be found to effectively confer Righthaven standing to maintain its copyright infringement claims at issue in the cases identified in the OSC.

With this response, and with the goal of providing this Court with a record that includes the Restated Amendment up to perform its standing analysis, Righthaven is concurrently filing amended complaints as a matter of right pursuant to Federal Rule of Civil Procedure 15(a)(1) ("Rule 15(a)(1)") for six of the ten cases identified in the OSC where it is authorized to do so. Amendment under Rule 15(a)(1) unquestionably focuses the Court's standing analysis on the allegations in Righthaven's amended complaints. *See Connect U LLC v. Zuckerberg,* 522 F.3d 82, 93 (1st Cir. 2008).[6]

To the extent the Court somehow refuses to consider the Restated Amendment associated with these amended complaints, Righthaven asks the Court to find that it owns the copyrights in view of the Clarification. (Gibson Decl. Ex. 3; Hinueber Decl. Ex. 3.) The decision in *Righthaven*

---

[6] To the extent leave of Court may be construed as applicable under Rule 15 in the remaining four cases, Righthaven requests leave in the interest of justice and judicial economy so as to resolve all cases identified in the OSC on the same factual record. *See* FED. R. CIV. P. 15(a)(2); *see also Eminence Capital, LLC v. Aspeon, Inc.,* 316 F.3d 1048, 1052 (9th Cir. 2003).

*LLC v. Democratic Underground, LLC,* 2011 WL 2378186, at *6 (D. Nev. June 20, 2011) ("*Democratic Underground*") did not consider Righthaven's standing to sue under the clarified version of the SAA.[7] While the *Hoehn* decision discussed the Clarification, it did not expressly conclude that it was part of the required standing analysis. (Case No. 2:11-cv-00050-PMP-RJJ, Doc. # 28 at 10 "Even assuming that the May 9, 2011 Clarification can change the jurisdictional analysis as they existed at the time of filing of the suit . . . ".) In sum, the *Hoehn* decision's uncertainty as to the Clarification's application clearly calls in question whether standing in view of the Clarification would be considered upon appeal to the Ninth Circuit. Thus, while Righthaven is certainly mindful of a natural inclination to give deference to the *Democratic Underground* and *Hoehn* decisions, the company respectfully asks this Court to independently examine the issue of standing under the Clarification based on its requirement that this document be submitted in connection with this OSC response.

Substantively Righthaven obtained all right, title and interest in the works, and has granted Stephens Media a non-exclusive license to exploit the work through the Clarification. (Gibson Decl. Ex. 3; Hinueber Decl. Ex. 3.) No controlling authority compels a finding that this transactional structure insufficiently conveys standing to pursue past—or future—claims of infringement simply because the assignee was created to enforce the intellectual property rights it acquired. Indeed, if that were the law, countless non-practicing entities would be deprived of standing to bring patent infringement claims.

Contrary to the arguable advisory analysis contained in the *Hoehn* decision, the optional recapture capabilities granted to Stephens Media under the Clarification should not impact Righthaven's ability to maintain this action. It is well established that limitations or restrictions do not invalidate an otherwise valid assignment. Indeed, Courts of Appeals throughout the country have rejected the argument that such limitations suggest a sham.

---

[7] The *Democratic Underground* decision confined its standing analysis to facts existing at the time

3

Finally, Righthaven maintains that it has, at a minimum, standing to sue for accrued copyright infringement claims based on the plain language of the executed assignments in each of the cases identified in the OSC (collectively the "Assignments")[8] despite the non-exclusive license-back to Stephens Media under the Strategic Alliance Agreement (the "SAA"). (Gibson Decl. Ex. 2; Hinueber Decl. Ex. 2.) It is black letter law that at the moment such an assignment occurs, Righthaven, as the current copyright owner, has standing to pursue an accrued claim for infringement. This is a much different situation than in *Silvers v. Sony Pictures Entm't Inc.*, 402 F.3d 881, 884 (9th Cir. 2005)("*Silvers*"), where the plaintiff, assigned only a **bare right to sue** for past copyright infringement, lacked standing. To the extent contrary findings were made in *Democratic Underground* and in *Hoehn*, Righthaven respectfully disagrees with these conclusions.

In short, Righthaven has standing to maintain the cases identified under the OSC given the content of the Restated Amendment, which was expressly prepared in response to the concerns expressed in the *Hoehn* decision. (Mangano Decl. Ex. 1 at 1.) The *Democratic Underground* and *Hoehn* decisions do not alter Righthaven's unequivocal standing to sue for infringement under the terms of the Restated Amendment. Should the Court somehow refuse to consider the Restated Amendment, Righthaven maintains that despite the decisions reached in *Democratic Underground* and *Hoehn* cases, it has standing to maintain the cases at issue in the OSC in view of the Clarification and, even more fundamentally, under the Assignments. Accordingly, Righthaven respectfully asks the Court to find it has standing sue for copyright infringement in the cases identified in the OSC.

---

[8] As required by the OSC, Righthaven has submitted copies of the Assignments with this response. (Mangano Decl. Exs. 2 - 11.)

4

## II. ARGUMENT

### A. Righthaven Unquestionably Has Standing to Sue Under the Restated Amendment.

There can be no doubt that Righthaven has standing to maintain the actions identified by the Court in the OSC under the Restated Amendment. In fact, the Restated Amendment was expressly designed to address the concerns set forth by in the *Hoehn* decision, which contains the most comprehensive and instructive discussion to date concerning the alleged contractual provisions that divest the company of standing to sue over content assigned to it by Stephens Media. (Mangano Decl. Ex. 1 at 1.)

First, the Restated Amendment fully clarifies that Stephens Media holds a non-exclusive license to exploit the works assigned to Righthaven. As a non-exclusive licensee, Stephens Media cannot sue for infringement of the Work. *See Davis v. Blige,* 505 F.3d 90, 101 (2d Cir. 2007)("[T]he holder of a nonexclusive license may not sue others for infringement."); *I.A.E., Inc. v. Shaver,* 74 F.3d 768, 775 (7th Cir. 1996)("[A] person holding a nonexclusive license has no standing to sue for copyright infringement."); *Eden Toys, Inc. v. Florelee Undergarment Co.,* 697 F.2d 27, 32 (2d Cir. 1982)("The Copyright Act authorizes only to types of claimants to sue for copyright infringement: (1) owners of copyrights, and (2) persons who have been granted exclusive licenses by owners of copyrights."). Rather, the right to sue for infringement of the works is held by Righthaven, which acquired ownership of the Work based on the Assignment from Stephens Media. *See* 17 U.S.C. § 101; 17 U.S.C. § 501(b).

Second, the Restated Amendment eliminates two provisions that were concerns in the *Hoehn* decision: (1) a provision giving Stephens Media 30 days written notice prior to exploiting an infringed work; and (2) a separate provision giving Stephens Media the option to repurchase the copyright. (Doc. # 28 at 10.) The 30-day notice provision has been completely eliminated from the Restated Amendment. (Mangano Decl. Ex. 1.) Likewise, Stephens Media's option to repurchase and assigned work may only be exercised five years after the date of assignment and fair market value must be paid to require a work. (*Id.*) Thus, Righthaven owns the works for at least a five-year term without the possibility of Stephens Media exercising its option to repurchase shortly after

assignment under a potential scenario given the terms of the Clarification recognized in the *Hoehn* decision.

Finally, the Restated Amendment does not restrict Righthaven's ability to exploit assigned works in any manner. Under the Clarification, the *Hoehn* decision expressed concern over the requirement that Righthaven notify Stephens Media of its intent to exploit any work outside of copyright infringement litigation. This notice requirement does not exist under the Restated Amendment. (Mangano Decl. Ex. 1.) Moreover, there is no restriction imposed on Righthaven's ability to exploit works or to license works to other parties. (*Id.*)

Quite frankly, Righthaven has sought to fully address all of the concerns expressed in the *Hoehn* decision. In doing so, this Court is presented with record that is unlike those at issue in either the *Democratic Underground* or the *Hoehn* decisions. Most importantly, however, Righthaven has protectively addressed the concerns expressed as an impediment to it having standing. Accordingly, the Court should find Righthaven has standing to maintain the actions identified in the OSC. In doing so, Righthaven hopes the standing issue is finally resolved in its favor so that it is no longer asserted by copyright infringers as a basis for escaping liability.

**B.     Righthaven Has Standing to Sue for Infringements Under the Clarification.**

It is black-letter law that a copyright owner has standing to bring a claim for infringement. 17 U.S.C. § 501(b) ("The legal or beneficial owner of an exclusive right under a copyright is entitled … to institute an action for any infringement of that particular right …."). A copyright owner need not have been the author or original owner; indeed, copyright law recognizes the transferability of the rights protected by copyright. 17 U.S.C. § 101 ("A 'transfer of copyright ownership' is an assignment, mortgage, exclusive license, or any other conveyance, alienation, or hypothecation of a copyright or of any of the exclusive rights comprised in a copyright, whether or not it is limited in time or place of effect, but not including a nonexclusive license.") It is also black-letter law that a non-exclusive licensee lacks standing to sue for infringement. *See id.*; *Silvers v. Sony Pictures Entm't, Inc.*, 402 F.3d 881, 898 n. 7 (9th Cir. 2005).

Pursuant to the Clarification, there can be no question that Righthaven obtained "all right, title and interest to said Work such that Righthaven shall be recognized as the copyright owner of the

Case 2:10-cv-01404-LRH -LRL   Document 30   Filed 07/08/11   Page 8 of 15

Work, shall have the right to register said Work with the United States Copyright Office, and shall have the right to pursue past, present and future infringements of the copyright in and to the Work." (Gibson Decl. Ex. 3; Hinueber Decl. Ex. 3.) As the owner of the copyright, Righthaven has the ability to exploit its exclusive rights as it sees fit. Righthaven may reproduce the copyrighted work, create derivative works, assign the copyright, grant licenses, receive royalty payments and sue for copyright infringement. In short, Righthaven may utilize the entire bundle of exclusive rights that accompany copyright ownership. Nothing in the Assignment or Clarification prevents Righthaven from doing so. Righthaven granted a non-exclusive license back to Stephens Media to use the copyrighted work (*Id.* Ex. 3 at § 7.2; Hinueber Decl. Ex. 3 at § 7.2), but that license does not divest Righthaven of its rights. *See Silvers*, 402 F.3d at 898 n. 7.

      Righthaven acknowledges the *Hoehn* decision did find, although potentially advisory in nature, that it lacked standing failed to bring suit for past infringement after considering the SAA and the Clarification. Righthaven respectfully maintains the court erred in reaching this conclusion. First, the *Silvers* decision did not involve a substantive evaluation of underlying contractual rights and responsibilities. Rather, in *Silvers*, the copyright owner executed an "Assignment of Claims and Causes of Action" in favor of the plaintiff, and retained ownership of the underlying copyright. *Silvers,* 402 F.3d at 883. The copyright owner in *Silvers* never purported to assign the underlying work itself, or any rights protected by copyright. Thus in *Silvers*, the ***only*** right, title and interest assigned was the right, title and interest in litigation. That is not the case before this Court.

      Another case also relied on in the *Hoehn* decision, *Nafal v. Carter*, 540 F. Supp. 2d 1128 (C.D. Cal. 2007), is similarly inapposite. As a preliminary matter, *Nafal* was decided under the more narrow 1909 Copyright Act (*id.* at 1138), which, in contrast to the 1976 Copyright Act, did not allow the bundle of rights protected by copyright to be separable. *Silvers*, 402 F.3d 881 at 896. Moreover, the plaintiff in *Nafal* never alleged that he owned the copyright at issue. Instead he was assigned a purported one-half interest to an exclusive licensee's rights but lacked any ability to exercise any rights under the copyright. 540 F. Supp. 2d at 1143. Additionally the plaintiff in *Nafal* was not a party to the original exclusive license agreement with the copyright owner (*id.* at 1141) and was also not t a co-exclusive licensee because he lacked any of the rights held by the other co-licensee (*id.* at 1142). Here, by contrast, the original copyright owner, Stephens Media, assigned the entirety of the

7

works at issue Righthaven, and Righthaven granted back to Stephens Media only the right to exploit the copyright on a non-exclusive basis under the Clarification. (Mangano Decl. Exs. 2-11; Gibson Decl. Ex. 3; Hinueber Decl. Ex. 3.) Under these circumstances, the only party to the transaction with any exclusive rights and the only party with standing to sue for copyright infringement is Righthaven.

### C. Neither the Purpose of the Transaction nor Stephens Media's Retention of Certain Rights Under the Clarification Invalidates the Assignment.

The *Hoehn* decision called into question the existence of two provisions in the Clarification: a provision giving Stephens Media 30 days written notice prior to exploiting an infringed work and a separate provision giving Stephens Media the option to re-purchase the copyright.  Any concerns over the effect of these provisions have been fully addressed in the Restated Amendment.  (Mangano Decl. Ex. 1.)  To the extent the Court somehow declines to consider the Restated Amendment, Righthaven respectfully asserts that the Clarification's provisions do not invalidate the rights assigned by Stephens Media, which includes the right to sue for, at least, acts of past infringement.

Parties routinely enter into complex agreements transferring intellectual property rights.  It is well established that these transfers are not invalid simply because the original owner retains some rights.  *See, e.g., Vittoria N. Am., L.L.C. v. Euro-Asia Imports Inc.*, 278 F.3d 1076, 1082 (10th Cir. 2001) (holding that a "thirty-day reassignment clause does not establish that [the trademark assignment] is a sham") (citing *Premier Dental Prods. Co. v. Darby Dental Supply Co.,* 794 F.2d 850, 855-56 (3d Cir. 1986) ("[L]imitations in an otherwise valid assignment do not invalidate it")); *Int'l Armament Corp. v. Matra Manurhin Int'l., Inc.*, 630 F. Supp. 741, 746 (E.D. Va. 1986) ("Plaintiff's ownership of the marks is subject to conditions on its license agreement with Carl Walther, which make that distributorship revocable by Walther for violation of 'essential' clauses.  Such limitations on an assignment do not invalidate or make it a sham, however.")

Moreover, the Ninth Circuit, more than 40 years ago, rejected the argument that an assignment made solely to facilitate a lawsuit is somehow improper.  In *Rawlings v. Nat'l Molasses Co.,* 394 F.2d 645, 648 (9th Cir. 1968), the Ninth Circuit held:

> Defendants make the further point that the arrangement between plaintiff and [assignor] was accomplished for the sole purpose of permitting plaintiff to bring this action without joining [assignor] as a party plaintiff or defendant.  We assume that to be true.  Defendants urge that the transaction was a sham.  The documents were in

> fact executed and nothing in the record indicates that as between [assignor] and plaintiff they are either void or voidable.  If not, then the purpose underlying their execution is of no concern to the defendants.

Thus, the Ninth Circuit long ago rejected the argument that the purpose behind a business transaction or a business itself has any bearing on the issue of standing.

Finally, as the Ninth Circuit held in *Silvers,* courts "should interpret the Copyright Act consistently with the requirement of the Patent Act" because of the fundamental similarity between the two types of intellectual property rights.  402 F.3d at 888; *see also Davis v. Blige*, 505 F.3d 90, 104 (2nd Cir. 2007) ("Although patent and copyright law function somewhat differently, courts considering one have historically looked to the other for guidance where precedent is lacking . . . . Licenses in patent and copyright function similarly . . . .").

Courts in numerous patent cases have rejected the argument that an otherwise valid transfer of intellectual property rights made to confer standing is somehow defective, or a sham, because the motivating business purpose is litigation.  For example, in a highly analogous case in the patent context, the Federal Circuit held that patent assignments made for the sole purpose of bringing suit are nonetheless valid.  *SGS-Thomson Microelectronics, Inc. v. Int'l Rectifier Corp.*, 1994 WL 374529 (Fed. Cir. Jul. 14, 1994).  There, the defendant urged the court to ignore the patent assignment between related corporate entities because, like here, the agreement was entered for the purpose of conferring standing to sue for infringement.  The defendant also argued "sham" because the assignment required the plaintiff to assign the patents back at the conclusion of the litigation, a much greater restriction than that present in this case.  *Id.* at *6.  The court rejected defendant's arguments, ruling that "[t]his court and other courts have held that an assignment that explicitly provides for possible transfer back to the assignor is nevertheless effective to give the assignee standing."  *Id.*  The court further held that:

> the district court erred in granting summary judgment on the ground that the assignments of the … patents were shams because the sole purpose of the assignment was to facilitate litigation.  In so ruling, the trial court ignored the express language in the assignments and in effect created a new requirement, not found in any case law, that a patent assignment must have an "independent business purpose."

*Id.*  Thus, in the very context that *Silvers* advises courts to consider, the Federal Circuit explicitly ruled that the motive or purpose of an assignment is irrelevant to the assignee's standing to enforce

the exclusive rights conferred and that the assignor's ability to re-acquire its rights does not deprive the assignee of its right to bring suit. *Id.* at *6-7.

In yet another case decided by the Federal Circuit, the court held that a grant of patent rights was sufficient to confer standing notwithstanding the fact that the grantor retained several rights relating to the patent. *See Vaupel Textilmaschinen KG v. Meccanica Euro Italia S.P.A.*, 944 F.2d 870 (Fed. Cir. 1991). In *Vaupel*, the grantor retained "1) a veto right on sublicensing by Vaupel; 2) the right to obtain patents on the invention in other countries; 3) a reversionary right to the patent in the event of bankruptcy or termination of production by Vaupel; and 4) a right to receive infringement damages." *Id.* at 875. Despite the grantor's retention of these rights, the court held that "none of these reserved rights was so substantial as to reduce the transfer to a mere license or indicate an intent not to transfer all substantial rights." *Id.* Here, as in *Vaupel*, the rights retained by Stephens Media do not negate the exclusive rights conferred to Righthaven; thus, Righthaven is the owner of the copyright and has standing to sue for infringement.

### D.     At a Minimum, Righthaven Has Standing to Sue for Past Infringements Under the Assignments.

Binding precedent establishes that the assignment from Stephens Media to Righthaven conveys upon Righthaven standing to bring suit for the accrued copyright infringement claims at issue in the cases identified in the OSC.

In *Silvers*, the Ninth Circuit held that an assignor can transfer the ownership interest in an accrued past infringement, but the assignee has standing to sue only if the interest in the past infringement is expressly included in the assignment and the assignee is also granted ownership of an exclusive right in the copyrighted work. *Id.* at 889-90. In so holding, the panel in *Silvers* aligned Ninth Circuit law with that of the Second Circuit as set forth in *ABKCO Music, Inc. v. Harrisongs Music, Ltd.*, 944 F.2d 971, 980 (2d Cir. 1991), which recognized the right to sue for past infringement when both the copyright and the accrued claims were purchased. *Silvers,* 402 F.3d at 889.

Multiple courts in this district, including this Court, have previously found the plain language of the identical copyright assignments conferred standing upon Righthaven to sue for past infringement under the *Silvers* requirements:

- *Righthaven LLC v. Virginia Citizens Defense League, Inc., et al.,* Case No. 2:10-cv-01683-GMN-PAL (D. Nev. June 23, 2011) ("*Virginia Citizens*").
- *Righthaven LLC v. Vote For The Worst, LLC, et al.,* Case No. 2:10-cv-01045-KJD-GWF (D. Nev. March 30, 2011).
- *Righthaven LLC v. Majorwager.com, Inc.,* 2010 WL 4386499, at *2 (D. Nev. Oct. 28, 2010).
- *Righthaven LLC v. Dr. Shezad Malik Law Firm P.C.,* 2010 WL 3522372, at *2 (D. Nev. Sept. 2, 2010).

(*See also* Gibson Decl. ¶¶ 9-10.)[9] Most recently, Judge Navarro declined to dismiss Righthaven's complaint for want of standing in the *Virginia Citizens* case despite her knowledge of the *Democratic Underground* and *Hoehn* decisions. (Doc. # 26 at 11-14.) **Rather, Judge Navarro astutely noted that any substantive analysis of the assignment's validity should be decided through a motion for summary judgment after the parties had conducted discovery.** (*Id.* at 13:10-13, emphasis added.)

As with the assignments in the above cases, the Assignments at issue here transferred all exclusive ownership rights in and to the works to Righthaven, and expressly included all accrued causes of action for copyright infringement:

> Assignor hereby transfers, vests and assigns [the Work]…to Righthaven…all copyrights requisite to have Righthaven recognized as the copyright owner of the Work for purposes of Righthaven being able to claim ownership as well as

---

[9] The *Democratic Underground* decision mischaracterized Righthaven's reliance on these decisions as being "[a]t best . . . disingenuous." (Doc. # 116 at 10:16-17.) Righthaven respectfully maintains that its reliance on these cases, both here and in the *Democratic Underground* case, are not and were not disingenuously asserted in any way. To clarify any misunderstanding this Court may construe from the harsh language contained in the *Democratic Underground* decision, Righthaven cites these prior decisions in support of its proposition that courts from this judicial district have found that the plain language of the assignments at issue complied with the requirements of the *Silvers* decision. Consistent with these prior decisions, the *Democratic Underground* decision did not conclude the plain language of the assignment at issue violated the requirements of the *Silvers* decision. (*See* Doc. # 116 at 6-11.) Rather, the *Democratic Underground* decision found that the assignment *in view of the original SAA terms* failed to comply with the *Silvers* decision. (*Id.* at 6.)

> the right to seek redress for *past, present and future infringements* of the copyright in and to the Work.

(Gibson Decl. ¶ 4, Ex. 1; Hinueber Decl. ¶ 4, Ex. 1; Mangano Decl. Exs. 2-11, emphasis added.)  At the moment of the Assignments, Righthaven became the owner of the works with all rights of ownership, including the right to register the works, license the works and to, at a minimum, seek redress for accrued infringement claims.  In other words, the Assignments confer upon Righthaven the exclusive rights required under the Copyright Act to at least bring suit for any infringement that occurred prior to Stephens Media's assignment to Righthaven. As parties frequently do, Righthaven licensed back to Stephens Media the right to exploit the works.

While parties in numerous other actions have alleged that this transactional structure constitutes a "sham" or meaningless assignment, adopting these allegations by a finding that Righthaven lacks standing to maintain this action for past infringement would eviscerate countless complex commercial and intellectual property transactions.  "Principles of contract law are generally applicable in the construction of copyright assignments, licenses and other transfers of rights." *Key Maps, Inc. v. Pruitt,* 470 F. Supp. 33, 38 (S.D. Tex. 1978).  An assignment transfers all rights, title and interest in and to the assigned property. *See id.; see also Pressley's Estate v. Russen,* 513 F. Supp. 1339, 1350 (D. N. J. 1981) ("An assignment passes legal and equitable title to the property . . . .").  Axiomatically, when the totality of rights are assigned by one party to another, and the party receiving said assignment then conveys a license of some interest to the same party or to another party, complete title to ownership vests in the assignee *prior to being divested through licensure*.

The assignment and license-back transactional structure described in the SAA does not eliminate Righthaven's ability to bring suit for *past infringements*, which is precisely what is at issue in the cases subject to the OSC.  As the Ninth Circuit held in *Silvers*, the right to sue for past infringement requires only an assignment of an ownership interest along with the expressed right to sue for an accrued claim for infringement. *Silvers,* 402 F.3d at 889-90.  Copyright ownership was transferred to Righthaven by the Assignments along with at least a perfected right to sue for *past infringements*.  Neither the *Democratic Underground* nor the *Hoehn* decision addressed the

temporal transfer of ownership and the right to sue for *past infringements* through Stephens Media's assignments to Righthaven.  Rather, these decisions coupled the assignments with the SAA's terms to find the transaction structure failed to meet the requirements of *Silvers*.  Righthaven respectfully disagrees with this conclusion.

While Righthaven promises under the SAA to license back to Stephens Media the right to exploit the acquired works, there can be no license until *after* the assignment of ownership rights and the right to sue for past infringements is conveyed.  This structure clearly conveys ownership and the right to sue for accrued infringement claims as is required to establish standing to sue for an accrued infringement claim under *Silvers*.  Finding otherwise requires the transfer of ownership through the Assignments along with the right to sue for, at least, past copyright infringements to be completely disregarded because of the post-assignment rights licensed back to Stephens Media.

### III. CONCLUSION

For the foregoing reasons, Righthaven respectfully requests the Court find that Righthaven has standing to maintain the actions identified in the OSC.

Dated this 7th day of July, 2011

                                        SHAWN A. MANGANO, LTD.

                                        <u>By: /s/ Shawn A. Mangano</u>
                                        SHAWN A. MANGANO, ESQ.
                                        Nevada Bar No. 6730
                                        shawn@manganolaw.com
                                        9960 West Cheyenne Avenue, Suite 170
                                        Las Vegas, Nevada 89129-7701

                                        *Attorney for Righthaven LLC*

**CERTIFICATE OF SERVICE**

Pursuant to Federal Rule of Civil Procedure 5(b), I hereby certify that I on this 7th day of July, 2011, I caused the foregoing document to be served by the Court's CM/ECF system.

SHAWN A. MANGANO, LTD.

By: /s/ Shawn A. Mangano
SHAWN A. MANGANO, ESQ.
Nevada Bar No. 6730
shawn@manganolaw.com
9960 West Cheyenne Avenue, Suite 170
Las Vegas, Nevada 89129-7701
Tel:   (702) 304-0432
Fax:   (702) 922-3851

*Attorney for Righthaven LLC*
